**Murray Kamionski - State Bar No. 221520**
Law Offices of Murray Kamionski
6262 Glade Ave
Woodland Hills, CA 91367
mkamionski@yahoo.com

**Nathan & Kamionski LLP**
Shneur Nathan
snathan@nklawllp.com
Avi Kamionski
akamionski@nklawllp.com
Ronnie White
rwhite@nklawllp.com
4220 Duncan Ave., Suite 201
St. Louis, MO 63110
(314) 597-8868

*Counsel for Defendant County of Los Angeles*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL SOLORIO, | Case No. 2:25-cv-06918-SB-SK |
| Plaintiff, | **Assigned to the Honorable District Court Judge Stanley Blumenfeld, Jr.** |
| v. | **DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO DISMISS PLAINTIFF'S COUNT V** |
| COUNTY OF LOS ANGELES, et al., | |
| Defendants. | Hearing Date: November 7, 2025 |
| | Time: 8:30 a.m. |
| | Courtroom: 6C |

To this Honorable Court, Plaintiff Miguel Solorio, and his attorneys of record:

Please take notice that Defendant County of Los Angeles hereby moves this Court for an order dismissing Count V of Plaintiff's Complaint. The hearing will take place on November 7, 2025, at 8:30 a.m., before the Honorable Stanley Blumenfeld, Jr., United States District Judge, in Courtroom 6C of the United States District Court for the Central District of California located at 350 West 1st Street, Los Angeles, CA 90012.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This Motion will be based on this Notice of Motion and the Memorandum of Points and Authorities filed concurrently herewith.

This Motion is made following the conference of counsel, pursuant to L.R. 7-3, which took place on October 3, 2025.

Dated: October 10, 2025   County of Los Angeles

             /s/ *Ronnie L. White II*
             Nathan & Kamionski, LLP
             4220 Duncan Avenue, Suite 201
             St. Louis, MO 63110
             (314) 597-8868
             rwhite@nklawllp.com

# **TABLE OF CONTENTS**

I.   Background ......................................................................................... 1

  A.  The December 6, 1998, Murder. ...................................................... 1

  B.  The Underlying Criminal Investigation & Plaintiff's Arrest. ............. 1

  C.  Plaintiff's Conviction & Post-Conviction. ...................................... 4

  D.  Plaintiff's Count V. ........................................................................ 4

II.  Argument ............................................................................................ 6

  A.  Legal Standard. ............................................................................... 6

  B.  Plaintiff Has Not Alleged A Municipal Policy. ............................... 6

   i.   Plaintiff has not alleged an unofficial policy through a longstanding custom or practice. ................................................................................... 7

    a.   Plaintiff has not alleged any prior acts of misconduct similar in timeframe and subject matter. ................................................................ 7

    b.   Plaintiff has not pled a failure to train *Monell* claim that would obviate the need for allegations of prior misconduct. ................................. 11

   ii.  Plaintiff has not alleged a policy through ratification ..................... 13

  C.  Plaintiff Has Not Alleged That the County Was Deliberately Indifferent ........ 15

  D.  Plaintiff Has Not Alleged That Any Inadequate Training Was The Moving Force Behind His Alleged Constitutional Violations ................................. 16

III.  Conclusion ....................................................................................... 17

**DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO DISMISS PLAINTIFF'S COUNT V**

1

**TABLE OF AUTHORITIES**

2
**Supreme Courts**
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)..................................................6

3
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)......................................6
*City of Canton v. Harris*, 489 U.S. 378, 392 (1989)........................................15

4
*City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) ...............................12
*Connick v. Thompson*, 563 U.S. 51, 63-68 (2011)......................................12, 17

5
*Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978)..................7

6
**Appellate Courts**
*Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) ...................................13

7
*Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)....................16, 17
*Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014)9, 10, 11, 12, 15

8
*Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021).........................7
*Hyde v. City of Willcox*, 23 F.4th 863, 874-75 (9th Cir. 2022) .....................12, 13

9
*Lemus v. Cnty. of Merced*, 2016 WL 2930523, at *4 (E.D. Cal. May 19, 2016), *aff'd*,
711 F. App'x 859 (9th Cir. 2017)..............................................................8, 9

10
*Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) ..........................................13
*Meehan v. Cnty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) ...............8, 9

11
*Oklevueha Native Am. Church of Hawaii v. Holder*, 676 F.3d 829, 834 (9th Cir.
2012)..............................................................................................1, 6

12
*Puente v. City of Phoenix*, 123 F.4th 1035, 1066 (9th Cir. 2024) .....................11
*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)...........................8, 10, 16

13
**District Courts**

14
*Allen v. City of Elk Grove*, No. 2:24-CV-01994-DJC-AC, 2025 WL 2605833, at *4–5
(E.D. Cal. Sept. 9, 2025) ..............................................................11, 14, 15

15
*Cabanillas v. City of South Gate, et al.*, No. 24-cv-8027-ODW, 2025 WL 2294327, at
*3 (C.D. Cal. Aug. 8, 2025) ...................................6, 9, 11, 12, 13, 15

16
*Doe #1 M.L. v. San Bernardino Sheriff Dep't*, 753 F. Supp. 3d 1024, 1030 (C.D. Cal.,
Oct. 15, 2024) ....................................................................................18

17
*Estate of Alejandro Sanchez v. County of Sanislaus*, 2019 WL 1745868, at *4 (E.D.
Cal. Apr. 18, 2019)............................................................................8, 9

18
*Godfrey v. Trujillo*, No. 25-cv-03462-AMO, 2025 WL 2391445, at *9-10 (N.D. Cal.
Aug. 18, 2025).........................................................................9, 10, 11

19
*Nguyen v. County of Orange*, No. 8:22-cv-01693-DOC-ADS, 2023 WL 4682301, *3
(C.D. Cal. Jun. 8, 2023)....................................................................14, 15

20
*Ortiz v. City of San Bernadino*, No. 25-cv-00118-SB-SP, 2025 WL 2377026, at *3-4
(C.D. Cal. July 16, 2025)...................................................................14, 15

21
*Perryman v. City of Pittsburg*, 545 F.Supp.3d. 796, 803 (N.D. Cal. Feb. 10, 2021) .14,
15

22
*Rodarte v. Cnty. of Orange*, No. 25-cv-2373-JVS-PVC, 2025 WL 2304329, at *7
(C.D. Cal. Aug. 5, 2025) .......................................................................11

23
*Terrell v City of Brentwood*, No. 25-cv-4341-LJC, 2025 WL 2606719, at *12 (N.D.
Cal. Sept. 8, 2025).................................................................................8

24
*Trenado v. County of Orange*, No. SA CV 17-2062-DOC(SSx), 2018 WL 5816202,
at *11 (C.D. Cal. May 2, 2018)..................................................................10

25

26
**Rules**
Fed. R. Civ. P. 12(b)(6) ..........................................................................6

27

28

**DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO DISMISS PLAINTIFF'S COUNT V**

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rule of Civil Procedure 12(b)(6), and for the reasons stated below, Defendant County of Los Angeles respectfully moves to dismiss Plaintiff's Count V, titled "*Monell* Claim."

## I.    Background

### A.    The December 6, 1998, Murder.1

On December 6, 1998, at around 11:00 p.m., Mary Ann Bramlett was shot in the head in her car at the intersection of Washington and Pioneer in Whittier, California. (Complaint "Compl."; Dkt. 1, ¶¶ 14, 21). She was 82 years old and died four days later. (*Id.*) There were two other passengers in her car. (*Id.* at ¶ 19). It is believed that shortly before the shooting, the car wherein the shot originated was parked under a highway pass west of Pioneer when a second car pulled up, words were exchanged between car occupants, and someone in the shooting car flashed a gun. (*Id.* at ¶¶ 16-17). The driver of the second car drove off and the shooting car followed. (*Id.* at ¶ 18). The second car proceeded to run a red light at the intersection of Washington and Pioneer, passing Bramlett in her car. (*Id.* at ¶ 19). The shooting car then arrived at the intersection and fired shots into Bramlett's car. (*Id.* at ¶ 20).

### B.    The Underlying Criminal Investigation & Plaintiff's Arrest.

Los Angeles County Sheriff's Department ("LASD") Officer Mark Brewster and his partner arrived on the shooting scene. (*Id.* at ¶ 25). Officer Brewster interviewed the two passengers in Bramlett's car:  Lucile Thompson and Ellis Butcher. (*Id.* at ¶ 27). Thompson could not provide a description of the shooter or the shooter's car. (*Id.* at ¶ 28). Butcher described the shooter's car as a "full size tan four door 1993 or 1994 vehicle." (*Id.* at ¶ 29).

---

[1] When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court must accept all well-pleaded allegations in the complaint as true. *Oklevueha Native Am. Church of Hawaii v. Holder*, 676 F.3d 829, 834 (9th Cir. 2012). As such, Defendant draws the following facts from Plaintiff's Complaint, which are assumed to be true for purposes of this Motion only.

Detective Jeffrey Grant was assigned as the lead investigator. (*Id.* at ¶ 30). He was assisted by Detective Kevin Lloyd, Mark Shaughnessy, S. Rostomian, Brewster, and First Name Unknown ("FNU") Leyva. (*Id.*) The investigation was supervised by Sergeant Paul Drake and Lieutenant James Vandepas. (*Id.*) A few days into the investigation, Officers Irma Torres and J. McGuffin, while driving in their squad car, were flagged down by a man named Martin Leiva. (*Id.* at ¶ 32). Leiva told Officers Torres and McGuffin he saw a news segment about the Bramlett shooting and believed he and passengers in his car were the intended targets of the shooting. (*Id.* at ¶ 33). Officers Torres and McGuffin then transported Leiva to a LASD station to further interview him further. (*Id.* at ¶ 34).

At the station, Leiva described the shooter's car as a "late model, 4 door, tan or brown vehicle." (*Id.* at ¶ 35). Leiva told officers that the driver of the shooting car said he was "Clever from Quiet Village" and flashed a .38 revolver. (*Id.* at ¶ 36). Officers interviewed the other passengers that were in Leiva's car that night, but they did not state that the driver of the shooting vehicle introduced himself as "Clever." (*Id.* at ¶¶ 38-39).

Investigating officers utilized the nickname "Clever" given by Leiva to formulate a photo lineup. (*Id.* at ¶ 43). The photo lineup included a photograph of Miguel Solorio. (*Id.*) Officers showed the lineup to Leiva and one of the passengers present in his car that night, Angelica Martinez. (*Id.* at ¶ 44). Neither Leiva nor Martinez chose Solorio's photograph from the photo lineup, and instead both picked a filler photograph. (*Id.* at ¶¶ 46-48). Officers then generated a second photo lineup containing a different photograph of Solorio. (*Id.* at ¶ 50). Officers presented this second lineup to Martinez, who then identified Solorio as the driver of the shooting car. (*Id.* at ¶¶ 55-56). Officers presented the second photo lineup to the other two passengers from Leiva's car, but neither witness chose Solorio's photograph. (*Id.* at ¶¶ 58-59).

**DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO DISMISS PLAINTIFF'S COUNT V**

Once an identification of Solorio was made, Officers Grant, Shaughnessy, Rostomian, and Leyva, sought and obtained a search warrant for Solorio's home, as well as a sedan that belonged to two brothers, Rafael and Edgar Solorzano; the sedan matched the description of the shooter's vehicle. (*Id.* at ¶¶ 63-64). Officers did not recover any connecting evidence from the search warrants. (*Id.* at ¶ 65). Then, Officers sought and obtained an arrest warrant for Solorio predicated on Martinez's identification. (*Id.* at ¶ 66).

Once Solorio was arrested, the Bramlett murder investigation was transferred to LASD's Homicide Bureau Detectives Dan McElderry and Robert Carr, Sergeant Kenneth Gallatin, and Lieutenant Ray Peavy. (*Id.* at ¶ 76). Detectives re-interviewed Solorio, who denied involvement in the shooting. (*Id.* at ¶ 78). Detectives re-interviewed Martinez, who told them that she heard the driver introduce himself as "Clever" prior to flashing his gun and that she was positive about her identification of Solorio because she was very familiar with him. (*Id.* at ¶¶ 81-82). Martinez also provided detectives with a more detailed description of the shooter's car, which matched the description of a two-door Mercury that was registered to Solorio. (*Id.* at ¶¶ 92-94). This car was located at its registered address. (*Id.* at ¶ 96).

Detectives re-interviewed a teenage witness who was in Leiva's car, and she also recalled the driver saying his name was "Clever" and stated that she recognized a photograph of Solorio released in a newspaper article as the driver. (*Id.* at ¶ 84). Detectives re-interviewed another teenage passenger in Leiva's car, Richard Casillas, who identified Solorio as the driver of the shooter car from the second photo lineup. (*Id.* at ¶ 87). Detectives also interviewed the last passenger in Leiva's car, Kelly Espinoza, who stated that she knew Solorio and that he was not the driver of the shooter car. (*Id.* at ¶ 89). Detectives further re-interviewed Leiva, who identified Solorio's photograph from the second photo lineup and identified a photograph of the Mercury car as the one he saw the night of the shooting. (*Id.* at ¶¶ 101, 103, 105). Officers also recovered two guns during an arrest of suspect gang members, one of

**DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO DISMISS PLAINTIFF'S COUNT V**

which was a .357 revolver that an LASD ballistics officer found was utilized in the Bramlett shooting. (*Id.* at ¶ 106). Officers interviewed one of the suspected gang members who stated that he saw Solorio with the revolver and that Solorio had given it to someone else when police arrived. (*Id.* at ¶¶ 107, 109).

### C.    **Plaintiff's Conviction & Post-Conviction.**

After a trial by jury, Solorio was convicted and sentenced to life without the possibility of parole. (*Id.* at ¶¶ 115, 118). In November 2023, Solorio's conviction was vacated. (*Id.* at ¶ 119). In December 2023, the charges against Plaintiff were dismissed and he was found factually innocent of the murder of Bramlett by the Superior Court of California, Los Angeles County. (*Id.* at ¶ 121). Plaintiff now brings this federal lawsuit, which he filed on July 28, 2025, against the County of Los Angeles, and Defendant Officers Dan McElderry, Kenneth Gallatin, Robert Carr, Jeffrey Grant, Mark Shaughnessy, Michael Galvan, Mark Brewster, Irma Torres, J. McGuffin, Paul Drake, Ray Peavy, James Vandepas, Kevin C. Lloyd, S. Rostomian, and unidentified employees of the County of Los Angeles. (Compl., Dkt. 1). Plaintiff attempts to allege four claims (Counts I through IV) against the Defendant Officers and one claim (Count V) against the County of Los Angeles:

- Count I: "Fourteenth Amendment: Due Process, Fair Trial" (*Id.* at ¶¶ 185-97);

- Count II: "Fourth Amendment: Malicious Prosecution" (*Id.* at ¶¶ 198-209);

- Count III: "Failure to Intervene" (*Id.* at ¶¶ 210-15);

- Count IV: "Conspiracy to Deprive Constitutional Rights" (*Id.* at ¶¶ 216-23); and

- Count V: "*Monell* Liability" (*Id.* at ¶¶ 224-39).

This Motion is filed on behalf of the County of Los Angeles and seeks dismiss Plaintiff's Count V of *Monell* liability for failure to state a claim.

### D.    **Plaintiff's Count V.**

**DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO DISMISS PLAINTIFF'S COUNT V**

In Count V of Plaintiff's Complaint, Plaintiff claims his alleged injuries and constitutional rights violations "were caused by the policies and customs of the Defendant County of Los Angeles, as well as by the actions of its policymaking officials including the Supervising Defendants." (*Id.* at ¶ 225). Plaintiff claims that the County "failed to promulgate proper or adequate rules, regulations, policies, and procedures governing:" conduct during interrogations; questioning of witnesses and suspects; the collection and handling of evidence and information; report writing; investigative note-taking; conduct during photo lineups and suspect identifications; and maintenance of investigative files. (*Id.* at ¶ 226). Plaintiff further alleges that "[i]n addition or alternatively" to the above, the County also "failed to promulgate proper and adequate rules, regulations, policies, procedural safeguards, and procedures for the training and supervision of officers" regarding the same topics. (*Id.* at ¶ 227).

According to Plaintiff, the County "was aware of the need for adequate policies, training, and supervision" but "made a deliberate choice not to adopt adequate policies, training, or supervision" pursuant to an "official policy." (*Id.* at ¶ 229). Plaintiff then alleges that had the County "promulgated appropriate policies" the alleged violation of Plaintiff's rights would not have happened. (*Id.* at ¶ 230). Plaintiff additionally alleges that the County had notice that its officers had the following practices and customs of:  (1) not recording investigative information or properly maintaining and/or disclose files; (2) falsifying witness statements; (3) failing to maintain, preserve, or destroy evidence; (4) conducting improper lineups; and/or (5) pursuing convictions through profoundly flawed investigations." (*Id.* at ¶ 231). Plaintiff alleges that the County and LASD's "leaders, supervisors, and policymakers . . . directly encouraged" and were "the moving force" behind the alleged misconduct "by failing to adequately train, supervise, and control" its officers and "by maintaining a code of silence[.]" (*Id.* at ¶ 232).

**DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO DISMISS PLAINTIFF'S COUNT V**

1   Additionally, Plaintiff asserts that the alleged "practices and customs were so
2   well settled as to constitute de facto policies of the" County and LASD. (*Id.* at ¶ 233).
3   Plaintiff claims that due to "a culture of impunity, a code of silence, and a failure to
4   discipline and supervise" the County and LASD allowed "widespread misconduct to
5   go unchecked." (*Id.* at ¶ 234). According to Plaintiff, the alleged instances of
6   misconduct described in the Complaint "were committed with the knowledge,
7   approval, or endorsement of persons with final policymaking authority for the"
8   County and LASD or by the Supervising Defendants. (*Id.* at ¶ 236). Plaintiff claims
9   that the misconduct set forth in the Complaint proximately caused his injuries. (*Id.* at
10  ¶¶ 237-39).

## II.  **Argument**

### A.  **Legal Standard.**

13  Under Federal Rule of Civil Procedure 12(b)(6), all or a portion of a complaint
14  may be dismissed if the relevant allegations fail to state a valid claim. Fed. R. Civ. P.
15  12(b)(6). When ruling on such a motion, a court accepts all factual allegations as true
16  and construes the complaint in the light most favorable to the plaintiff. *Oklevueha*
17  *Native Am. Church of Hawaii*, 676 F.3d at 834. However, "conclusory allegations
18  and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.*
19  (internal quotations omitted); *see also Cabanillas v. City of South Gate, et al.*, No.
20  24-cv-8027-ODW, 2025 WL 2294327, at *3 (C.D. Cal. Aug. 8, 2025) ("[A] court
21  need not blindly accept conclusory allegations, unwarranted deductions of fact, and
22  unreasonable inferences."). The factual "allegations must be enough to raise a right to
23  relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555
24  (2007). That is, the complaint must "contain sufficient factual matter, accepted as
25  true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.
26  662, 678 (2009) (internal quotation marks omitted).

### B.  **Plaintiff Has Not Alleged A Municipal Policy.**

**DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO DISMISS PLAINTIFF'S COUNT V**

Plaintiff's Count V seeks to impose what is referred to as "*Monell*" liability against the County, named after the seminal case of *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978). *Monell* liability requires a plaintiff to prove (1) a deprivation of his constitutional rights, (2) that the municipal defendant had a policy, (3) that the policy amounted to deliberate indifference to his constitutional right, and (4) that the policy was the moving force behind the constitutional violation. *Gordon v. County of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (internal citation and quotations omitted). Here, as discussed below, this Court should dismiss Plaintiff's *Monell* claim because Plaintiff failed to plead the second, third and fourth elements.

### i. Plaintiff has not alleged an unofficial policy through a longstanding custom or practice.

Plaintiff's Complaint is devoid of sufficient allegations to plausibly meet the second element of a *Monell* claim, which requires showing that the County had a policy—whether written or unofficial—of the *specific* misconduct alleged in the Complaint, namely a widespread practice of evidence fabrication, the withholding, suppression and destruction of exculpatory evidence, and the use of unduly suggestive identification procedures. Here, Plaintiff's Complaint pursues a theory that, rather than the County having a written policy consistent with the above-described misconduct, the County allowed an unofficial policy of such misconduct to become so widespread "as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 690 (internal quotations omitted). However, as outlined below, these allegations fail because the Complaint pled an insufficient amount of prior, similar acts to the misconduct alleged in the Complaint.

### a. Plaintiff has not alleged any prior acts of misconduct similar in timeframe and subject matter.

An unofficial custom or practice "may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."

*Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). Rather, "[t]o show that a constitutional violation was part of a longstanding practice, [plaintiff] generally must provide specific examples of ***similar incidents***[.]" *Terrell v City of Brentwood*, No. 25-cv-4341-LJC, 2025 WL 2606719, at \*12 (N.D. Cal. Sept. 8, 2025) (emphasis added). There is no clear brightline rule as to the number of similar incidents that should be pled; however, courts in the Ninth Circuit have held that it should be "more than a few." *Lemus v. Cnty. of Merced*, 2016 WL 2930523, at \*4 (E.D. Cal. May 19, 2016), *aff'd*, 711 F. App'x 859 (9th Cir. 2017); *see also Estate of Alejandro Sanchez v. County of Sanislaus*, 2019 WL 1745868, at \*4 (E.D. Cal. Apr. 18, 2019) (recognizing that while "it is difficult to discern from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim," it at least requires "more than a few" such incidents) (internal citations and quotations omitted); *Meehan v. Cnty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (finding two examples of prior incidents of misconduct insufficient to support *Monell* claim). Here, the examples of prior acts of misconduct contained in Plaintiff's Complaint amount to merely isolated incidents that sporadically occurred over a ten-to-fifteen-year timeframe and deviate in subject matter. Such dissimilar, sporadic incidents are insufficient to support Plaintiff's *Monell* claim.

For example, paragraph 151 of Plaintiff's Complaint lists twelve different examples, purportedly in support of his allegations that LASD and the County had "a policy and practice of fabricating and suppressing evidence from criminal suspects[.]" (Compl., ¶ 150). However, one of those listed incidents occurred in 1985; seven incidents occurred between 1989 and 1990; two incidents occurred in 1991; one example incident in 1995; and the last incident occurred in 1999. There is a large gap in time between the majority of the listed incidents, occurring between 1985 and 1991, in comparison to when the investigation underlying this lawsuit and Plaintiff's arrest occurred, which took place in 1998. The remaining two other incidents listed jump from 1995 to 1999, leaving only one of Plaintiff's cited examples having

8

occurred within one year of Plaintiff's arrest. The other examples occurred over the course of a large timeframe of four years to thirteen years prior to Plaintiff's arrest. These examples clearly constitute sporadic and isolated incidents, that fail to support Plaintiff's *Monell* claim.[2] *See Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (affirming dismissal of *Monell* claim because plaintiff did "not allege a pattern of sexual assaults . . . before her alleged assault in 2011. . . . The isolated incidents of criminal wrongdoing by one deputy . . . [did] not suffice"). Merely listing two examples near the timeframe of the incident is insufficient to support a *Monell* claim. *See Meehan*, 856 F.2d at 10; *Estate of Alejandro Sanchez*, 2019 WL 1745868 at *4; *Lemus*, 2016 WL 2930523 at *4.

Plaintiff lists additional examples of prior misconduct in paragraph 167 of his Complaint. However, these examples completely deviate in subject matter from the type of misconduct that the Complaint alleges occurred in the investigation underlying this lawsuit. All six of the examples listed in paragraph 167 relate to excessive force incidents, even though the misconduct alleged in this case consists of fabrication; suppression, destruction, and withholding of exculpatory evidence; and unduly suggestive identification procedures. These type of *Monell* allegations were recently rejected in *Godfrey v. Trujillo*, No. 25-cv-03462-AMO, 2025 WL 2391445, at *9-10 (N.D. Cal. Aug. 18, 2025).

In *Godfrey*, the plaintiff alleged that the officer defendants coerced witnesses and failed to disclose exculpatory evidence which caused his conviction. 2025 WL 2391445, at *1. The plaintiff alleged that a municipality was deliberately indifferent

---

[2] Plaintiff also asserts in ¶ 151(k) and (l) that "the Department suppressed evidence of" Franscisco Carrillo and Frank O'Connell's alleged "wrongful conviction[s]." For Carrillo's conviction, Plaintiff alleges that the Department suppressed evidence over a twenty-year timeframe (1991 to 2011) and for O'Connell's conviction, over a twenty-seven-year timeframe (1985 to 2012). These conclusory allegations should be rejected as they lack sufficient facts indicating when exactly the alleged misconduct occurred, when the convictions occurred, and when and whether those convictions were reversed based on the misconduct alleged. Without these factual specifications, the Court should not afford these allegations any truth. *Cabanillas*, 2025 WL 2294327 at *3.

**DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO DISMISS PLAINTIFF'S COUNT V**

toward a pattern and practice of its officers coercing witnesses and committing *Brady* violations. *Id.* at *9-10. In support of his *Monell* claim based upon an unofficial custom, the plaintiff alleged various prior acts of misconduct relating to excessive force incidents. *Id.* at *10. The Court, however, rejected these allegations because the plaintiff failed to provide allegations "explain[ing] how a history of excessive force . . . and . . . deliberate indifference to that excessive force, resulted in *different* constitutional violations, such as fabrication of evidence and failure to disclose *Brady* material." *Id.* at *10 (emphasis in original). Based on the plaintiff's failure to assert such connecting allegations, as well as similar examples of prior misconduct, the Court dismissed the plaintiff's *Monell* claim. *Id.*

Here, as in *Godfrey*, this Court should reject Plaintiff's allegations of prior incidents of misconduct contain in paragraph 167 of his Complaint because they are completely unrelated to the specific type(s) of misconduct Plaintiff allegedly experienced. Plaintiff's Complaint lacks allegations explaining how, even viewing his allegations of prior excessive force misconduct and deliberate indifference towards that conduct as true, that prior misconduct of a completely different subject matter resulted in the constitutional violations he claims caused his damages—evidence fabrication, *Brady* violations, and unduly suggestive identification practices. *Godfrey*, 2025 WL 2391445 at *10. Despite Plaintiff's Complaint containing examples of prior misconduct, the majority of those allegations are distinguishable in subject matter and fail to show "sufficient duration, frequency and consistency" in timeframe. *Trevino*, 99 F.3d at 918. As such, this Court should dismiss Plaintiff's *Monell* claim because it lacks similar examples of prior misconduct that show a pattern beyond mere sporadic and isolated incidents of the specific misconduct being alleged in this case. *See Flores*, 758 F.3d at 1159; *Godfrey*, 2025 WL 2391445, at *10; *see also Trenado v. County of Orange*, No. SA CV 17-2062-DOC(SSx), 2018 WL 5816202, at *11 (C.D. Cal. May 2, 2018) ("Indeed, Plaintiffs do not sufficiently allege a custom, policy, or practice, because Plaintiffs do not allege any other instances of the asserted violations

by Defendants, beyond the alleged violations that Plaintiffs claim to have experienced themselves."); *Allen v. City of Elk Grove*, No. 2:24-CV-01994-DJC-AC, 2025 WL 2605833, at *4–5 (E.D. Cal. Sept. 9, 2025) (where prior incidents alleged are factually dissimilar, "the Court cannot find that a pattern exists such that an unconstitutional custom or policy can be discerned.").

> **b.    Plaintiff has not pled a failure to train *Monell* claim that would obviate the need for allegations of prior misconduct.**

Plaintiff's Complaint vaguely asserts that the County failed to adequately train, supervise, and discipline its officers. (Compl., ¶¶ 131, 141, 154-55, 159-61, 167, 170, 173, 177, 180, 227, 229, 232, 234). However, like other pattern and practice claims, a failure to train claim requires "a pattern of similar constitutional violations by untrained employees[.]" *Flores*, 758 F.3d at 1159; *see also Rodarte v. Cnty. of Orange*, No. 25-cv-2373-JVS-PVC, 2025 WL 2304329, at *7 (C.D. Cal. Aug. 5, 2025) ("Success on a failure to train theory predicated on previous constitutional violations ordinarily requires Plaintiff to demonstrate '[a] pattern of similar constitutional violations by untrained employees.'") (quoting *Puente v. City of Phoenix*, 123 F.4th 1035, 1066 (9th Cir. 2024)). As outlined above, because Plaintiff's Complaint is devoid of sufficient similar examples of prior misconduct, his *Monell* claim based on a failure to train, supervise, and discipline theory must also fail. *See Cabanillas*, 2025 WL 2294327, at *3 (where plaintiff failed to "establish[] a pattern of similar misconduct that would have placed [the municipality] on notice of any training deficiencies" his failure-to-train theory fails); *Allen*, 2025 WL 2605833, at *5 (*Monell* claim based on a failure to train theory fails when prior incidents of misconduct "are not sufficiently similar to support the showing of a pattern such that a failure to train would be supported.") (internal quotations omitted); *Godfrey*, 2025 WL 2391445, at *10 (where the complaint failed to allege sufficiently similar prior misconduct incident, his failure-to-train claim could not survive a motion to dismiss.

**DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO DISMISS PLAINTIFF'S COUNT V**

1     The narrow exception where a failure to train claim does not need prior
2  examples of misconduct otherwise known as single-incident liability, does not apply
3  here. This narrow exception was developed in *City of Canton, Ohio v. Harris*, 489
4  U.S. 378, 390 (1989), where the Court analyzed a hypothetical involving deadly force
5  training and found that when officers find themselves in predictable situations, it is
6  obvious that specific training and tools would be needed to handle that situation.
7  *Connick v. Thompson*, 563 U.S. 51, 63-68 (2011) (Scalia, J., concurring). However, if
8  a plaintiff alleges misconduct that is obviously wrong, one would not reasonably
9  expect training is needed to avoid it. *Id. See also Hyde v. City of Willcox*, 23 F.4th
10  863, 874-75 (9th Cir. 2022) (the "patently obvious" consequences of a failure to train
11  from an inadequate training policy "cannot be inferred from a single incident.").

12     For examples, in *Flores*, the Ninth Circuit affirmed a district court's dismissal
13  of a *Monell* claim based on a failure to train where the plaintiff alleged that the
14  County failed to adequately train its officers to not sexually assault people. 758 F.3d
15  at 1159-60. The Court found that the narrow single-incident liability exception does
16  not apply to circumstances where it is not patently obvious that training would be
17  necessary to prevent the misconduct alleged. *Id.* Similarly, in *Cabanillas*, the Court
18  also found that the misconduct alleged did not meet the narrow exception, where the
19  plaintiff alleged officers intentionally framed the plaintiff for a crime he did not
20  commit. 2025 WL 2294327, at *6-7 (where plaintiff failed to sufficiently allege "that
21  his constitutional violations were the result of a policy or custom, rather than the
22  individual choices of conduct of the officers" his *Monell* claim must fail because it
23  would "otherwise improperly place the claim within the ambit of respondeat
24  superior.").

25     Here, like in *Flores* and most similar to the holding in *Cabanillas*, the
26  misconduct Plaintiff alleges is not the type of patently obvious conduct that would
27  require specific training avoid it. Like the plaintiff in *Cabanillas*, Plaintiff here
28  alleges that the Officer Defendants intentionally framed Plaintiff for a crime he did

not commit by intentionally fabricating evidence, intentionally withholding, suppressing, and destroying exculpatory evidence, and intentionally conducting lineups in an unduly suggestive manner. 2025 WL 2294327 at *6-7; (*see also* Compl., ¶ 231). That alleged misconduct is not conduct in which it would be so patently obvious that training would be needed to avoid such misconduct occurring. *Hyde*, 23 F.4th at 874-75. Thus, because the Complaint is devoid of examples of prior similar incidents of misconduct, Plaintiff's *Monell* theory based upon a failure to train, supervise, and discipline should be dismissed.

### ii. Plaintiff has not alleged a policy through ratification.

Plaintiff's *Monell* claim, based upon the theory that persons with final policymaking authority ratified the Officer Defendants' alleged misconduct, also fails. Plaintiff vaguely asserts that the final policymakers with decision-making authority were the supervising defendants named in the Complaint—Officer Defendants Peavy, Drake, Gallatin, and Vandepas. (Compl., ¶ 12). Yet, beyond that surface level assertion, the Complaint is devoid of other allegations alleging specific knowledge on behalf of Officer Defendants Peavy, Drake, Gallatin, and Vandepas—including how the supervising officers knew that Plaintiff was framed; that reports were fabricated; and that witness statements were falsified. Courts routinely reject such boilerplate and conclusory allegations.

For example, in *Christie v. Iopa*, the Ninth Circuit affirmed the district court's finding that the plaintiff failed to establish ratification where the complaint lacked allegations that the alleged policymaker had "knowledge of the alleged constitutional violation." 176 F.3d 1231, 1239 (9th Cir. 1999). The Ninth Circuit further held that it is not enough to allege that policymakers approved of their subordinates' conduct, but also that they approved of the "*basis* for it" or in other words, the actual violations that allegedly occurred. *Id. See also Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) ("A mere failure to overrule a subordinate's actions, without more, is insufficient."); *Ortiz v. City of San Bernadino*, No. 25-cv-00118-SB-SP, 2025 WL 2377026, at *3-4

**DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO DISMISS PLAINTIFF'S COUNT V**

(C.D. Cal. July 16, 2025) (dismissing *Monell* claim where plaintiff failed to allege beyond mere "conclusory," "vague," and "speculative" allegations that the city "permits officers to engage in a broad assortment of constitutional violations."); *Nguyen v. County of Orange*, No. 8:22-cv-01693-DOC-ADS, 2023 WL 4682301, *3 (C.D. Cal. Jun. 8, 2023) (dismissing *Monell* claim based on ratification theory where complaint only contain conclusory allegations that "fail[ed] to allege any actions that the . . . policymakers took in connection with their 'approval' of the misconduct[.]"); *Allen*, 2025 WL 2605833, at *6 (dismissing *Monell* claim based on ratification theory where "the current [complaint] allegations do not sufficiently allege" that the alleged policymaker had any "deliberate or conscious decisions in any incident other than an absence of discipline for the officers' actions[.]") (internal quotations omitted); *Perryman v. City of Pittsburg*, 545 F.Supp.3d. 796, 803 (N.D. Cal. Feb. 10, 2021) (holding allegation that policymakers "approved" of and "endorsed" defendant officer's conduct were "conclusory and lacking factual support of ratification" because no facts were pled explaining "*how*" the conduct was ratified) (emphasis in original).

Here, the Complaint is devoid of allegations specifying the acts of ratification committed by the Officer Defendants Peavy, Drake, Gallatin, and Vandepas. Furthermore, the Complaint fails to allege facts establishing if any of the officers had knowledge of the investigating Officer Defendants' alleged misconduct or how exactly they ratified such actions. In fact, the Complaint only mentions Officer Defendants Peavy, Drake, Gallatin, and Vandepas a total of three times. (*See* Compl., Peavy, ¶¶ 10, 12, 76; Drake, ¶¶ 10, 12, 30; Gallatin, ¶¶ 10 (*sic*), 12, 76; Vandepas, ¶¶ 10, 12, 30). None of those allegations establish any knowledge or specific actions on behalf of each officer; instead, and Plaintiff offers only the conclusory allegations that these officers "conducted, directed, reviewed, approved and ratified decisions of the other Officer Defendants, along with engaging in investigative activities themselves." (*Id.* at ¶ 12). Without any supporting allegations of specific ratifying

**DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO DISMISS PLAINTIFF'S COUNT V**

1  actions or, at the very least knowledge, on behalf of these alleged supervising

2  officers, Plaintiff's *Monell* claim fails under the ratification theory. As courts within

3  this circuit have consistently held, where such allegations are missing, Plaintiff's

4  *Monell* claim should be dismissed. *See Ortiz*, 2025 WL 2377026 at *3-4; *Nguyen*,

5  2023 WL 4682301 at *3; *Allen*, 2025 WL 2605833 at *6; *Perryman*, 545 F. Supp. 3d

6  at 803.

7      **C.**    **<u>Plaintiff Has Not Alleged That the County Was Deliberately</u>**

8            **<u>Indifferent.</u>**

9      Even if this Court finds that Plaintiff established the second element of his

10  *Monell* claim, Plaintiff's Complaint must also contain sufficient allegations plausibly

11  showing that the policy showed "deliberate indifference to the constitutional rights of

12  [the County's] inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 392 (1989).

13  Here, Plaintiff fails to plausibly allege notice and deliberate indifference on behalf of

14  the County because his Complaint lacks allegations of similar prior incidents of

15  misconduct.

16      Plaintiff's failure to allege prior acts of misconduct is also fatal to this element

17  of a *Monell* claim. As outlined above, Plaintiff's Complaint is devoid of sufficient

18  allegations of prior incidents of similar misconduct. Without such prior incidents, the

19  Complaint fails to plausibly state that the County was put on notice of a widespread

20  practice of officers fabricating evidence, withholding, destroying, and suppressing

21  exculpatory evidence, and of utilizing unduly suggestive identification practices. *See*

22  *Cabanillas*, 2025 WL 2294327 at *5 (dismissing *Monell* claim where the complaint

23  failed "to allege a pattern of similar misconduct establishing that [the municipality]

24  was deliberately indifferent to the alleged custom."). In the same vein, without clear

25  allegations of prior incidents of similar misconduct, the Complaint fails to plausibly

26  state that the County was put on notice that the manner in which its officers were

27  trained, supervised, and disciplined was deficient with regard to the specific

28  misconduct alleged in this case. *See Flores*, 758 F.3d at 1159-60 (affirming dismissal

of *Monell* claim where plaintiff failed to allege a pattern of prior violations and holding that the municipality did not have notice of training inadequacies).

Plaintiff's code of silence allegations also fail to plausibly show deliberate indifference on behalf of the County. Plaintiff's Complaint contains numerous allegations regarding the existence and practice of "deputy gangs" and their alleged pervasive use of a "code of silence" to cover-up misconduct. (Compl., ¶¶ 137-38, 159, 232, 234). These allegations fail to support Plaintiff's *Monell* claim because they are vague in nature and are unrelated to the specific misconduct alleged in this case.

For example, the Complaint does not contain any allegations that the deputy supervisors named as Defendants in this case, particularly Officer Defendants Peavy, Drake, Gallatin, and Vandepas, took any part in these alleged "deputy gangs." Nor are there any allegations in the Complaint that the district in which this investigation took place, and the other involved investigating officers and detectives, were part of these "deputy gangs." Perhaps more importantly, the prior incidents of misconduct, listed in paragraph 151, as outlined above, are too sporadic and isolated in nature to plausibly allege that the County had notice of, and was deliberately indifferent toward, the specific constitutional violations Plaintiff claims harmed him. *Trevino*, 99 F.3d at 918. As such, the Complaint fails to meet the deliberate indifference element of Plaintiff's *Monell* claim, warranting dismissal.

### D.   Plaintiff Has Not Alleged That Any Inadequate Training Was The Moving Force Behind His Alleged Constitutional Violations.

A government entity cannot be liable under *Monell* unless the identified "policy, practice or custom . . . can be shown to be the moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Put simply, the municipal policy must have caused the underlying constitutional violations.

As outlined above, Plaintiff failed to plead sufficient facts to plausibly state the existence of an identifiable municipal policy and sufficient incidents of prior

16

misconduct that would give the County notice of a widespread practice or custom of the specific misconduct alleged here or notice of deficiencies in its training, supervision, and discipline of its officers. Without such supporting allegations, the Court cannot plausibly infer that any action on behalf of the County was the moving force behind Plaintiff's alleged injuries in this case. *See Dougherty*, 654 F.3d at 900.

Further, Plaintiff's vague allegations of inadequate training, supervision, and discipline are undermined by the type of misconduct that Plaintiff alleges gave rise to his claims here. As stated throughout this Motion**,** Plaintiff's Complaint pleads that the Officer Defendants intentionally framed him through their intentional acts of fabricating evidence, withholding, destroying, and suppressing exculpatory evidence, and of utilizing unduly suggestive identification practices. Accepting these allegations as true, there are no facts from which this Court could infer that such actions were caused by a lack of training, discipline, or supervision, as an increase in any of those categories would not overcome an officer's conscious decision to lie in order to frame an innocent person, which is what Plaintiff alleges occurred here. *See Connick*, 563 U.S. at 76 (noting that the withholding of exculpatory evidence "was almost certainly caused not by a failure to give prosecutors specific training, but by [a] miscreant prosecutor['s] . . . willful suppression of evidence he believed to be exculpatory, in an effort to railroad [Plaintiff]."). Thus, without any plausible municipal policy pled as the moving force behind Plaintiff's alleged constitutional violations, this Court should dismiss Count V of Plaintiff's Complaint.

## III.  <u>Conclusion</u>

Plaintiff's *Monell* claim relies upon many irrelevant allegations that lack necessary factual enhancements to establish a causal connection between those allegations and the specific misconduct alleged in this lawsuit. Boilerplate allegations that merely repeat the elements of a *Monell* claim in a vague and conclusory manner are insufficient to state a plausible claim. *See, e.g.*, *Dougherty*, 654 F.3d at 900 (noting *Monell* claim "lack[ed] any factual allegations that would separate them from

the 'formulaic recitation of a cause of action's elements' deemed insufficient [by the Supreme Court].");  *Doe #1 M.L. v. San Bernardino Sheriff Dep't*, 753 F. Supp. 3d 1024, 1030 (C.D. Cal., Oct. 15, 2024) (dismissing *Monell* claim where "Plaintiff's allegations are boilerplate and conclusory"). In accordance with precedent from this District and within the Ninth Circuit, Plaintiff's *Monell* claim (Count V) should be dismissed, with prejudice.

The undersigned, counsel of record for the County of Los Angeles, certifies that this brief contains 5,773 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 10, 2025       County of Los Angeles

/s/ *Ronnie L. White II*
Ronnie White
Nathan & Kamionski, LLP
4220 Duncan Avenue, Suite 201
St. Louis, MO 63110
(314) 597-8868
rwhite@nklawllp.com

DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO DISMISS PLAINTIFF'S COUNT V

1

## <u>MEET AND CONFER CERTIFICATION</u>

2     *I, Ronnie L. White II, the undersigned attorney, certify that the parties met via*

3 *telephone conference, thoroughly discussed each and every issue raised in the*

4 *motion, and attempted in good faith to resolve the motion in whole or in part.*

5 Dated: October 10, 2025                              */s/ Ronnie L. White II*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEFENDANT COUNTY OF LOS ANGELES'S MOTION TO DISMISS PLAINTIFF'S COUNT V**